884 F.2d 1393
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Susan VENTRE, a minor, by Nancy VENTRE, Plaintiff-Appellant,
v.
LAKOTA LOCAL SCHOOL DISTRICT BOARD OF EDUCATION, Defendant-Appellee.
 No. 88-3428.
 United States Court of Appeals, Sixth Circuit.
 Sept. 20, 1989.
 
 Before DAVID A. NELSON and BOGGS, Circuit Judges, and HENRY R. WILHOIT, District Judge.*
 PER CURIAM.
 
 
 1
 Nancy Ventre, on behalf of her minor daughter Susan Ventre, appeals the district court's determination upholding the Lakota School District's individualized education plan (IEP) for Susan Ventre, which reclassified her as developmentally disabled (mildly mentally retarded) from her present classification as learning disabled (having a disorder in one or more of the basic psychological processes involved in understanding or using the language). We affirm the district court's decision upholding this classification as being within the school board's discretion.
 
 
 2
 * Susan Ventre has been enrolled in the Lakota School District since Kindergarten. From the beginning of her enrollment, school officials noted that she had difficulty with social skills and academic achievement expected of someone her age. With one exception, Susan has consistently scored in the mildly mentally retarded range (50-80) on I.Q. tests at each of several administrations in the first, third, and sixth grades. However, after her first test, due to perceived problems with anxiety and protests by Susan's parents, the school district decided that Susan might instead be learning disabled. Although this result was questioned by school officials after both Susan's third grade and sixth grade tests, she was kept in the learning disabled program at the insistence of her parents.
 
 
 3
 In the ninth grade Susan scored at the first, second, or third grade levels in most areas of achievement. At this point, the school sought to transfer her into a developmentally disabled program for the 1985-86 school year. The parents requested an administrative review of this decision in 1985, thus allowing Susan to stay in the learning disabilities program pending the resolution of the issue.
 
 
 4
 Pursuant to 20 U.S.C. Sec. 1415(b)(2), a hearing was held by an impartial hearing examiner on February 24 and 25, 1986. On March 23, 1986, the hearing examiner approved the IEP proposed by the district and ordered its implementation as written, placing Susan in the class for the developmentally disabled.
 
 
 5
 The parents appealed the decision to the Ohio Department of Education. On June 2, 1986, a referee at the state level adopted the conclusions of the impartial hearing examiner, and also recommended that the school district initiate an evaluation for speech and occupational therapy. Thereafter, on June 24, 1986, Nancy Ventre filed a complaint in federal district court.
 
 
 6
 During the pendency of the district court hearing, Susan's parents secured a preliminary injunction to keep her in the learning disabilities class along with one mainstreaming class. Subsequently, a bench trial was held on January 4 and 5, 1988. The administrative record was admitted as evidence, as was live testimony. Additionally, both parties agreed to the partial submission of depositions instead of live testimony before the district court for purposes of judicial economy.
 
 
 7
 The district court upheld the determination of the state agency, and the court's opinion stated that "[w]e have reviewed all the testimony...." However, the court reporter who sealed the depositions and sent them to the district court has signed an affidavit to the effect that these depositions were never opened or examined.
 
 
 8
 The depositions included testimony of one of appellant's experts, Dr. Oleski, stating that Susan scored better on more complex sections of I.Q. tests than her overall scores would reflect, indicating a learning disability as opposed to mental retardation.
 
 
 9
 Appellant challenges the district court's determination on grounds of improper procedure, misapplication of legal doctrine, and insufficiency of the evidence.
 
 II
 
 10
 The appellant's strongest claim on appeal is that the decision of the district court should be reversed because it made an error of law in failing to consider all of the relevant evidence, and that if it had looked at the relevant evidence, it should have overturned the decision of the board.
 
 
 11
 The Education for the Handicapped Act requires a de novo review by the district court of state decisions on individualized education plans by the district court, while giving appropriate deference to the state agency. Roncker on behalf of Roncker v. Walter, 700 F.2d 1058, 1061-1062 (6th Cir.1983) (citing Bd. of Educ. of the Hendrick Hudson Central School District v. Rowley, 102 S.Ct. 3034 (1982)). Therefore, the district court must independently review the evidence and hear any additional evidence submitted, as contemplated by the statute. Wexler v. Westfield Bd. of Educ., 784 F.2d 176, 181 (3rd Cir.1986).
 
 
 12
 In the present case, appellant claims that the district court did not independently evaluate all of the evidence submitted in deposition form because the original seal on the depositions had never been broken. The appellant has an affidavit from the court reporting service attesting to this fact, and the record is silent as to any possible reason for this (such as a duplication of the depositions in other places, etc.). In most instances, this would be reversible error, and the district court (if it did not) certainly should have examined all of the evidence before it, including any deposition submitted by the parties. However, in this case the error, if any, is harmless.
 
 
 13
 From our reading of the record including the depositions, it appears that this evidence could not have affected the outcome of the case. The unopened depositions included that of Dr. Oleski, one of appellant's experts. He gave Susan the same I.Q. tests given by the school district, while trying to accomodate her handicaps. However, even in his administration, Susan received the same total raw score as she did with the tests given by the school officials. Therefore, the evidence in the depositions, even if read by the district court, could not have affected the outcome of its decision.
 
 
 14
 Furthermore, the decision of the state agency was not incorrect. Although there is some evidence that Susan has a visual perception disorder that could account for some of her problems, given the deference we are to give to the state proceedings, and taking into account the results of the large battery of tests performed by the school district, we conclude that the decision of the state board should be affirmed.[1]
 
 
 
 *
 The Honorable Henry R. Wilhoit, United States District Judge for the Eastern District of Kentucky, sitting by designation
 
 
 [1]
 Appellant's contention that the testing by the state was legally insufficient because it did not take into account Susan's impaired sensory skills, as mandated by 34 CFR Sec. 300.532 and Ohio Adm.Code 3301-51-02(D)(5)(c), is without merit. As noted in the body of our opinion, Dr. Oleski administered the same tests given by the school district while accomodating Susan's alleged handicaps, and received the same results as did the state. Furthermore, the record shows that the state did attempt to accomodate Susan's alleged handicaps in many of the test administrations